IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAUNDRA LEE WHISMAN,       )
                                )
       Plaintiff,          )
                                )    Civil Action No. 20-1783
      vs.               )
                                )
KILOLO KIJAKAZI,[1]       )
*Acting Commissioner of Social Security*,  )
                                )
       Defendant.

## ORDER

AND NOW, this 22nd day of June 2022, the Court has considered the parties' motions

for summary judgment and will grant Defendant's Motion.  Substantial evidence supports the

Administrative Law Judge's ("ALJ") decision denying Plaintiff's application for supplemental

security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et*

*seq*.  Accordingly, the Court will affirm the decision.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152

(2019) (citing 42 U.S.C. § 405(g)).[2]

---

[1]    Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil
Procedure 25(d).  This change does not impact the case.  42 U.S.C. § 405(g).  The Clerk is
directed to amend the docket to reflect the substitution.

[2]    Plaintiff argues that the ALJ's decision—which, pursuant to 20 C.F.R. § 416.1481,
became the Social Security Administration's ("SSA") final decision when the Appeals Council
denied Plaintiff's request for review (R. 1)—is not supported by substantial evidence.  In
furtherance of her argument, Plaintiff alleges that the ALJ erred at almost every step of the five-
step analysis used to evaluate disability.  Having considered Plaintiff's contentions, the Court is
unpersuaded that the ALJ erred as Plaintiff has alleged.  The ALJ's decision is supported by
substantial evidence and will be affirmed.

Pursuant to the five-step analysis used to evaluate disability, an ALJ "consider[s] . . .
whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets
or equals the requirements of a listed impairment, (4) can return to his or her past relevant work,
and (5) if not, whether he or she can perform other work." *Roberts v. Astrue*, No. 02:08-CV-

0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009) (citing 20 C.F.R. §§ 404.1520, 416.920; *Burnett v. Comm'r of Social Security*, 220 F.3d 112, 118—19 (3d Cir. 2000)). Reviewing courts defer to an ALJ's findings if they are supported by substantial evidence—*i.e.*, "such relevant evidence as a reasonable mind might accept as adequate"—and the ALJ "build[s] an accurate and logical bridge between the evidence and the result." *Komorek v. Comm'r of Soc. Sec.*, No. CV 20-34, 2021 WL 1197507, at *1 (W.D. Pa. Mar. 30, 2021) (citing *Biestek*, 139 S. Ct. at 1154; *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014)).

Plaintiff's first argument is that the ALJ erred at step two of the five-step analysis. There, the ALJ found nine severe, medically determinable impairments: Sjogren's syndrome, Raynaud's, connective tissue disease, migraines, arthritis, degenerative disc disease of the lumbar spine, obesity, depression, and anxiety. (R. 17). Plaintiff argues that the finding is incomplete because the ALJ should have found additional severe, medically determinable impairments, including cholecystectomy (gallbladder removal), bile duct issues, fibromyalgia, bilateral osteoarthritis of the knees, and severe back spasms. At step two, a claimant must prove that he or she has at least one severe medically determinable impairment or combination thereof. 20 C.F.R. § 416.920(a)(4)(ii). To be medically determinable, the claimant's impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 416.921. To be severe, the claimant's impairment(s) must "significantly limit[] the claimant's physical or mental ability to do 'basic work activities.'" *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 144 (3d Cir. 2007). Step-two impairments must also be "expected to result in death" or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909 ("the duration requirement").

In this matter, the ALJ adequately explained her exclusion of some of Plaintiff's alleged impairments from the step-two finding. The ALJ found that Plaintiff's gastroesophageal reflux disease (GERD) and obstructive sleep apnea (OSA) were not severe because no well-documented limitations arose from those impairments. (R. 17). Plaintiff's gallbladder removal and associated bile duct problems were not step-two impairments because they had neither lasted nor were expected to last more than twelve months. (R. 17—18). The ALJ further found that Plaintiff's alleged fibromyalgia and post-traumatic stress disorder (PTSD) were not step-two impairments because there were no clear, ongoing diagnoses for those impairments in the record. (R. 18). Not only that, but the evidence of record did not establish the specific requirements for fibromyalgia that are laid out in SSR 12-2P. (R. 18 (citing SSR 12-2P, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012)). And while Plaintiff argues that the ALJ failed to account for her back spasms and bilateral osteoarthritis of the knees at step two, the ALJ's decision indicates the opposite. At step two, the ALJ found Plaintiff's lumbar degenerative disc disease and arthritis were severe, medically determinable impairments. (R. 17). Further, even if the ALJ had overlooked Plaintiff's back or knee impairments at step two, she accounted for them when she found Plaintiff's residual functional capacity ("RFC") finding at step four. (R. 20—21). Thus,

even if there had been a step-two error regarding Plaintiff's back and knee impairments, it would have been rendered harmless by the RFC determination. *Salles*, 229 Fed. Appx. at 145 n.2.

Concerning the ALJ's step-three finding, Plaintiff appears to cursorily contest the ALJ's decision that she did not meet or equal the criteria of any presumptively disabling physical impairment(s). Though the ALJ considered several such impairments (Listings 1.02, 1.04, and 14.10), she found that the record lacked evidence showing "listing level severity" and also lacked "the necessary clinical, laboratory, or radiographic findings" for those Listings. (R. 18). Plaintiff concedes that she "cannot disagree" with the ALJ's step-three finding, "although her well documented bilateral osteoarthritis of the knees combined with her obesity certainly raise consideration." (Doc. No. 18, pg. 7). The Court hesitates to call this passing assertion an argument. To the extent that it might be construed as an argument that the ALJ failed to consider the combined effect of Plaintiff's arthritis and obesity at step three, it is "so fleeting" that it is "forfeited." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 890 n.11 (3d Cir. 2020) (citing *Pa. Dep't of Public Welfare v. U.S. Dep't of Health & Human Servs.*, 101 F.3d 939, 945 (3d Cir. 1996)).

Plaintiff's next arguments pertain to the ALJ's step-four finding, particularly her formulation of the RFC. Here, the ALJ found Plaintiff's RFC included the ability to perform sedentary work with added physical and mental limitations that included limitation to only occasionally climbing ramps and stairs, crouching, kneeling, or crawling. (R. 19). The ALJ also found Plaintiff would only be able to "balance and stoop" frequently. (*Id.*). Plaintiff argues that this RFC is not supported by substantial evidence because the ALJ ignored evidence, relied on the wrong evidence, and failed to account for the combined effect of Plaintiff's impairments. Having reviewed the RFC and the ALJ's discussion of the evidence undergirding it, the Court discerns no error in its formulation.

A claimant's RFC is his or her "maximum sustained work ability." *Fleck v. Kijakazi*, 2022 WL 1203845, at *4 (W.D. Pa. Apr. 22, 2022) (citation omitted). The RFC must account for limitations arising from all of a claimant's medically determinable impairments. SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). To that end, the ALJ must weigh "all the relevant evidence" in his or her assessment of the RFC. 20 C.F.R. § 416.945(a)(1). The ALJ's consideration of this evidence should be documented in "a narrative discussion," *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019), wherein the ALJ explains what "weight" he or she afforded "obviously probative exhibits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (citation omitted). However, the ALJ need not go so far as to address "every relevant treatment note." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Nor must the ALJ use "particular language" or a "particular format" for his or her explanation. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). If an ALJ provides an adequate discussion of evidence to permit review and supports his or her findings with substantial evidence, the courts will not "re-weigh" the evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Further, while evidence may cease to be "substantial" where it is "overwhelmed by other evidence," *Kent*

3

_____

*v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983), the mere "presence of evidence in the record that supports a contrary conclusion" does not undermine a well-supported decision. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009).

Pursuant to this deferential standard, the Court first addresses Plaintiff's argument that the ALJ failed to account for her back spasms and bilateral osteoarthritis of the knees in the RFC. (Doc. No. 18, pgs. 7, 10, 16—17). This argument is unpersuasive given the ALJ's clear consideration of the evidence pertaining to these physical impairments and associated symptoms. The ALJ explicitly considered Plaintiff's "chronic back pain and spasms" as well as "significant ongoing pain and dysfunction in her bilateral lower extremities." (R. 20). In her review of the objective medical evidence in the record, the ALJ specifically noted Plaintiff's documented "history of . . . back spasms" and "osteoarthritis of the bilateral knees for which she received medication management and injection therapy." (*Id.*). The ALJ also detailed her consideration of Plaintiff's orthopedist's treatment notes and further considered prior administrative medical findings that corroborated Plaintiff's chronic pain. (R. 21—22). This discussion of relevant evidence shows definitively that the ALJ did not overlook Plaintiff's back and knee impairments in her formulation of the RFC.

Next, the Court addresses Plaintiff's argument that the ALJ selectively cited—*i.e.*, "cherry-pick[ed]" (Doc. No. 18, pg. 12)—her rheumatologist's "lazy 'cut and paste'" observation that she had an "unremarkable gait" and, further, misattributed it to Plaintiff's primary care physician ("PCP"). As an initial matter, the Court discerns no harm in the ALJ's misattribution of the treatment note in this instance. The note in question is a mere treatment note, not a medical opinion. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions" in the ability to meet certain demands of work. 20 C.F.R. § 416.913(a)(2). Plaintiff's rheumatologist's observation of an unremarkable gait does not constitute such an opinion. To successfully argue that the ALJ's erroneous attribution of a treatment note to her PCP instead of her rheumatologist would warrant remand, Plaintiff would have to demonstrate that this error "made any difference." *Holloman v. Comm'r Soc. Sec.*, 639 Fed. Appx. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009)). Plaintiff has not identified what, if any, difference this minor error might have made. Turning to Plaintiff's argument that this note did not reflect Plaintiff's condition and was unfairly selected to represent her gait during the relevant time, the Court finds that the ALJ was balanced in her consideration of evidence in the record that reflected Plaintiff's gait. The ALJ acknowledged instances where Plaintiff's gait was observed to be abnormal (R. 21) as well as unremarkable (R. 20). Thus, the ALJ's decision refutes Plaintiff's charge that the ALJ cherry picked only that evidence that was favorable to her RFC finding for support.

Plaintiff has also argued that the ALJ's RFC finding cannot be found to be supported by substantial evidence because the ALJ failed to consider the combined effect of Plaintiff's migraines with her other impairments. In this matter, the ALJ found migraines were one of

Plaintiff's severe impairments at step two. (R. 17). In her explanation of the evidence she considered toward Plaintiff's RFC, the ALJ noted Plaintiff's testimony pertaining to "recurrent migraine headaches without specific triggers." (R. 20). The ALJ also addressed Plaintiff's treatment records for headaches, *e.g.*, treatment notes from her neurologist. (R. 21). Those records showed that Plaintiff was treated with Botox injections, gabapentin, and meclizine. (*Id.*). Plaintiff's neurologist recorded that Plaintiff's symptoms "were stable" without evidence of "exacerbations" between appointments in 2018 and 2019. (*Id.*). In her summation of how this and other evidence led her to the RFC, the ALJ explained that she limited Plaintiff's "exposure to adverse environmental elements" to accommodate her migraines. (R. 23). This review of the evidence and explanation for the RFC finding shows that the ALJ considered the combined effect of Plaintiff's impairments—migraines included. If the Court were to require more specific language to that effect, it would encroach on ALJs' freedom to employ whatever language and format they choose to explain RFC determinations. *See Jones*, 364 F.3d at 505.

The Court is similarly unmoved by Plaintiff's argument that the ALJ erred in her consideration of Dr. Isabella Picciotti's prior administrative medical findings. Because Plaintiff's application was filed after March 27, 2017, it was incumbent on the ALJ to assess Dr. Picciotti's findings for their persuasiveness pursuant to the factors at 20 C.F.R. § 416.920c(c). In this matter, the ALJ found Dr. Picciotti's findings persuasive. (R. 22). Plaintiff argues that this was error. She contends that Dr. Picciotti's findings were unreliable because she ignored evidence of Plaintiff's 2014 tibial fracture, osteoarthritis, and back spasms in her articulation of Plaintiff's limitations. However, the Court finds that, to the contrary, Dr. Picciotti specifically acknowledged those medical problems. In her review of Plaintiff's medical history, Dr. Picciotti noted that Plaintiff had a history of "L knee MRI-healing fracture of proximal tibia," "crepitus . . . in BL knees," and treatment of the "L-spine," *i.e.*, her lower back. (R. 119). Dr. Picciotti also expressly addressed Plaintiff's "degenerative disc" and "degenerative joint disease" in her explanation of her findings. (R. 120). The ALJ appropriately evaluated the persuasiveness of Dr. Picciotti's assessment and found that her opinion was "persuasive" because Dr. Picciotti had "reviewed the claimant's medical record through June 2018 and provided specific reasoning based on the evidence available for her assessed limitations." (R. 22). Not only that, but her findings were "consistent broadly with the available evidence," including evidence that Plaintiff "experience[d] chronic pain, particularly in her lower extremities, and had an abnormal gait" but "maintained normal strength and sensory functioning." (*Id.*). The Court discerns no error in this assessment of Dr. Picciotti's findings and reliance upon them.

The Court is similarly unpersuaded that the ALJ erred in how she weighed what Plaintiff presents as evidence from around the same time as Dr. Picciotti's findings that contrasted with those findings. Plaintiff points to hospitalization records that indicate Plaintiff had back spasms and "[o]ther abnormalities of gait and mobility." (R. 476). They also indicate that Plaintiff was "High Risk" for falling, had a "gait that is modified by pain," and "had a right leg injury that causes her to use a cane for ambulation that increases her back spasms." (R. 478). The ALJ indicated in her decision that she considered these records (R. 20 (citing Ex. B7F)) and that this

and other evidence led her to find that Plaintiff had "a history of numerous physical impairments including . . . undifferentiated connective tissue disease, back spasms, and osteoarthritis of the bilateral knees for which she received medication management and injection therapy as of her protective filing date." (*Id.*). Though the ALJ's treatment of the hospitalization records is brief, she was not expected to "make reference to every relevant treatment note." *Fargnoli*, 247 F.3d at 42. Moreover where, as here, the ALJ clearly considered the evidence that Plaintiff argues ought to have been afforded greater weight than certain other evidence, the Court stresses that it cannot re-weigh evidence. *Chandler*, 667 F.3d at 359. This is not a case where the evidence the ALJ relied on ceased to be substantial because it was overwhelmed by other evidence. *See Kent*, 710 F.2d at 114. While the ALJ might have relied on Plaintiff's hospitalization records to find that Plaintiff was more limited than Dr. Picciotti believed her to be, substantial evidence does not cease to be so merely because other evidence in the record might have supported an alternative conclusion. *Malloy*, 306 Fed. Appx. at 764.

Plaintiff's remaining arguments are largely presented as step-five challenges to the ALJ's reliance on testimony provided by the vocational expert ("VE") who testified at Plaintiff's hearing. At step five, the ALJ found that Plaintiff could adjust to work despite her inability to return to past work. The VE helped the ALJ identify two appropriate occupations for that purpose: Mail Sort Clerk and Surveillance Systems Monitor. (R. 24). Together, these offered approximately 180,000 jobs in the national economy. (*Id.*). Plaintiff argues that in arriving at this finding, the ALJ ignored parts of the VE's testimony and Plaintiff's own testimony that should have led the ALJ to conclude that Plaintiff could not sustain work in either occupation. Where, as here, claimants challenge an ALJ's reliance on VE testimony, they often just alternatively state RFC challenges. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005) ("[O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself."). Accordingly, the Court will only be persuaded of the errors alleged if the ALJ failed to include all "credibly established" limitations in her questioning of the VE or ignored the VE's testimony about the effect(s) of such limitations. *Id.*

Plaintiff argues that the ALJ failed to account for the VE's testimony that eliminating balancing and stooping from the RFC would eliminate both occupations. (R. 83). In her decision, the ALJ found Plaintiff could balance and stoop frequently. Thus, the question before the Court is whether the ALJ's "frequently balance and stoop" limitation (R. 19) was supported by substantial evidence. Plaintiff argues that her "constant use of a cane" or other assistive device, 2014 accident and resultant surgeries, osteoarthritis, and fibromyalgia pain should have led the ALJ to further restrict balancing and stooping (as well as her crouching, kneeling, and crawling). (Doc. No. 18, pgs. 9—10). However, the ALJ supported her finding that Plaintiff could balance, stoop, kneel, crouch, and crawl by citing Dr. Picciotti's finding that Plaintiff could "frequently balance and stoop" and "occasionally . . . kneel, crouch, or crawl." (R. 22). And, to the extent Plaintiff separately argues that the ALJ should have included a cane or other assistive device in the RFC, the ALJ explained that there was not enough evidence in the record

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 19) is GRANTED as specified above.

s/ Alan N. Bloch
United States District Judge

ecf:    Counsel of Record

---

to establish that such a device was medically necessary.  Indicia in the record that Plaintiff used a cane included instances where one was prescribed, but there were other instances when Plaintiff was noted to have "ambulated without assistance."  (R. 20—21).  It was incumbent upon the ALJ to address and resolve this evidence in her decision, which she did.

Plaintiff has also argued that the ALJ should have limited the amount of time that Plaintiff could look at a monitor.  She argues that the ALJ had no reason to not believe Plaintiff's testimony that prolonged staring at a screen would result in a migraine.  (R. 84).  A claimant's testimony alone cannot establish the existence of a limitation.  20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").  Plaintiff points to no objective medical evidence in the record that established this limitation.  Further, even if objective evidence corroborated the alleged limitation, the limitation only affected Plaintiff's ability to work as a Surveillance Systems Monitor.  (R. 84).  If the Court were to set aside that job, the ALJ's non-disability determination is still supported by her finding that there were 19,000 Mail Sort Clerk jobs available to Plaintiff in the national economy. Relatedly, Plaintiff has argued that the ALJ ignored the VE's testimony that an individual who was off task more than 20% of the time or absent more than once each month would be unable to maintain employment.  But the mere asking of a hypothetical question does not bind the ALJ to account for the limitations in that hypothetical in the final decision.  *Pearson v. Comm'r of Soc. Sec.*, 839 Fed. Appx. 684, 690 (3d Cir. 2020) (explaining that a "subsequent hypothetical question about a person who would be off-task fifteen percent of the time, does not bind [the ALJ] to the premise of the question" where it goes beyond those limitations that are credibly established in the RFC).  Plaintiff points to no evidence that credibly established she would be off task more than 20% of the time or frequently absent.  For this and the foregoing reasons, the ALJ's final decision for the agency shall be affirmed.